IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| BRONSON KANEAIAKALA, #A1052859, | CIVIL NO. 20-00409 JAO-RT |
|---|---|
| Petitioner, | |
| vs. | ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY |
| MARTIN FRINK, Warden, Saguaro Correctional Center, | |
| Respondent. | |

**ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Before the Court is Petitioner Bronson Kaneaiakala's ("Petitioner") Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Amended Petition"). ECF No. 5. Specifically, Petitioner challenges his conviction in the Circuit Court of the First Circuit, State of Hawaiʻi for Burglary in the First Degree in violation of Hawaiʻi Revised Statutes ("HRS") § 708-810(1)(c). For the following reasons, the Petition is DENIED. Any certificate of appealability is DENIED.

# I. BACKGROUND

## A. Circuit Court Proceedings

On January 26, 2015, Petitioner was charged by Felony Information with Burglary in the First Degree, in violation of HRS § 708-810(1)(c). ECF No. 10-2 at 1.

### 1. Motion to Suppress Eyewitness Identification

On June 9, 2015, Petitioner filed a Motion to Suppress Identification of the Defendant ("Motion to Suppress"), arguing that the circuit court should suppress all evidence related to Mari Laraway's ("Laraway") field show-up identification of Petitioner. ECF No. 10-3 at 1–2. The parties applied the same legal standard to Petitioner's challenge to the admissibility of eyewitness identification based on an impermissibly suggestive identification procedure: whether the pretrial identification procedure was "impermissibly suggestive" and, if so, whether the witness's identification is sufficiently reliable such that it is worthy of presentation to and consideration by the jury. *Id.* at 5 (quoting *State v. Okumura*, 78 Hawaiʻi 383, 391, 894 P.2d 80, 88 (1995)); ECF No. 10-4 at 4 (same) (additional citations omitted). The parties further agreed that in determining the reliability of the witness's identification, the circuit court should consider the following five factors: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the

witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation. ECF No. 10-3 at 5 (citing *State v. Padilla*, 57 Haw. 150, 154, 552 P.2d 357, 360 (1976)); ECF No. 10-4 at 5 (citing *State v. Araki*, 82 Hawaiʻi 474, 485, 923 P.2d 891, 902 (1996)). These factors were first articulated in *Neil v. Biggers*, 409 U.S. 188 (1972), and were adopted by the Hawaiʻi Supreme Court in *State v. Padilla*.

The circuit court held an evidentiary hearing on Petitioner's Motion to Suppress on September 1 and 8, 2015. ECF No. 10-7 at 1. Testifying through a Japanese language interpreter, Laraway stated that at around 12:30 p.m. on January 24, 2015, she called 911 because she saw a man entering an apartment through a window at the building where she resided while walking from her apartment to her car parked on the street. ECF No. 10-5 at 6, 9, 20–21. Laraway first saw the man at a distance of about four meters (which is just over 13 feet), crouching behind a hedge next to a bicycle and by the road. *Id.* at 15–16. She was able to see the side of his face — approximately half of it — but never saw his full face. *Id.* at 16–17, 35–36. Laraway noticed a rolled-up window screen, which she thought was unusual. *Id.* at 17. Laraway testified that she would be able to recognize the man again if she saw him and when asked, identified Petitioner, who was present in the courtroom, as the man. *Id.* at 17, 19.

Laraway initially observed that the man had short curly hair, a scruffy face, was not Black, and appeared to be Caucasian with light brown suntanned skin. *Id.* at 20. Laraway recalled that the man was wearing a white or light blue shirt with long sleeves. *Id.* at 22. The man was also wearing a hat with a brim that Laraway believed was covering a portion of the front of his face. *Id.* at 34–35. Laraway testified that during the 911 call, she described the man as a "skinny [B]lack guy" wearing a light blue t-shirt, and was not asked about his hair or face. *Id.* at 36–37, 63.

While communicating with a police officer telephonically sometime between 12:30 and 3:00 p.m., Laraway did not describe the man she had identified earlier. *Id.* at 38, 40, 64. When Laraway returned home at some point after 3:00 p.m., police officers onsite informed her that they had apprehended a possible suspect in the laundromat in her apartment building and asked her to participate in a field show-up outside. *Id.* at 23–24, 42–43. Laraway identified Petitioner at the field show-up, while he was handcuffed and standing shirtless 10 to 15 feet away, with the left side of his face over his shoulder in view. *Id.* at 25–26, 44. Laraway informed the police officers that she was "[p]retty sure" that the man at the field show-up was the man she had seen earlier that day based on his body, the complexion of his skin, the structure of his face, and his hair color. *Id.* at 25–26, 49. The police officers did not ask Laraway to identify anyone else. *Id.* at 45.

4

Laraway admitted on cross-examination that it "may be possible" that she would have difficulty distinguishing between two people with similar body shapes and complexions without seeing their faces. *Id.* at 50.

Following her visual identification of Petitioner, Laraway completed a suspect description form indicating that the man wore long pants and a long-sleeved shirt. *Id.* at 23, 46. During her testimony, Laraway stated that she selected the wrong descriptors and instead recalled that the man wore short pants and possibly a short-sleeved shirt. *Id.* at 66–67. On the form, Laraway described the man's facial hair as "scruffy." *Id.* at 71–72. Laraway also selected 5'6" to 5'8" to describe his height, based on her observations of him standing next to police officers, because she had not seen him standing upright earlier in the day. *Id.* at 74–75. In her written statement, Laraway represented that she was "almost positive" that the man she identified for the police was the man she had seen earlier that day. *Id.* at 76.

Laraway told a detective later that evening that she had bad eyesight and was not wearing her glasses when she identified Petitioner. *Id.* at 47–48. Laraway testified that without her glasses, she can see a person's general shape and outline, as well as colors, but has difficulty seeing details. *Id.* at 48–49. According to Laraway, her glasses are for seeing at far distances, so she uses them while driving

5

to read street name signs, not for viewing traffic signs or watching television.[1]  *Id.* at 60–61.  Laraway confirmed that she was able to get a good look at the man from 10 to 15 feet away even though she was not wearing her glasses.  *Id.* at 32, 62.

Honolulu Police Department Officer Kanoa Hose ("Officer Hose") also testified at the suppression hearing.  ECF No. 10-6 at 5–6.  Officer Hose first encountered Petitioner, who was naked, in the apartment building's laundry room.  *Id.* at 13.  Another police officer was already present.  *Id.* at 15.  Officer Hose thought Petitioner matched the dispatcher's description of the suspect as a local male.  *Id.* at 39–40, 43.  Officer Hose found a light blue, long-sleeved dress shirt and black shorts near Petitioner.  *Id.* at 16–17.

Officer Hose later asked Laraway whether she would be able to recognize the man she observed near the apartment window.  *Id.* at 18.  She responded affirmatively, so he queried whether she would be willing to participate in a field show-up, and she agreed.  *Id.*  Officer Hose did not inform Laraway that the apprehended man was the man she saw earlier nor that he had burglarized the apartment.  *Id.* at 19.

Officer Hose estimated that no more than 40 feet separated Laraway and Petitioner at the field show-up.  *Id.* at 21.  Officer Hose recalled that Laraway was

---

[1] Laraway wore her glasses at the suppression hearing, but not at trial.  ECF No. 10-5 at 59; ECF No. 10-9 at 28.

able to see Petitioner from a slight angle, and that after looking at him for five to ten seconds, she identified him as the man she had seen earlier, without expressing the level of certainty in her identification. *Id.* at 22–24. During defense counsel's cross examination of Officer Hose, the prosecutor stipulated that the field show-up was impermissibly suggestive and proceeded on reliability. *Id.* at 31, 33.

The circuit court orally denied the Motion to Suppress. Applying the *Padilla/Biggers* factors it concluded that despite the impermissibly suggestive identification procedure, Laraway's identification of Petitioner was sufficiently reliable based on the totality of the circumstances: (1) opportunity to view the suspect — Laraway was able to get a "good look" at the man during the middle of the day, from four meters away, and was able to see his build, complexion, and clothing; (2) degree of attention — Laraway observed the screen of the apartment rolled up, observed a bicycle next to the man, thought it was unusual that a man was crouched by the hedge near the window, immediately did not recognize the man, and was alarmed enough to call 911; (3) accuracy of the prior description of the suspect — Laraway described the man as a skinny Black male and identified articles of clothing such as a shirt, cap, and shorts; (4) level of certainty — Laraway was "pretty sure" that Petitioner was the man she previously observed based on his complexion, body shape, and hair, and while acknowledging the possibility that two people with a similar body shape and complexion could lead to

7

a potential misidentification, she was certain Petitioner was the man she saw earlier; and (5) length of time between crime and confrontation — approximately two hours lapsed between Laraway's 911 call and her identification of Petitioner. *Id.* at 54–56.

On October 27, 2015, the circuit court entered its Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Suppress Identification of Defendant. ECF No. 10-7.

2. **Trial**

The case proceeded to a jury trial on April 18, 2016. ECF No. 10-8. Laraway once again identified Petitioner as the man she saw crouching near the hedge alongside her apartment building. ECF No. 10-9 at 19–20. The jury found Petitioner guilty of Burglary in the First Degree, and the circuit court sentenced Petitioner to a 10-year term of imprisonment. ECF No. 10-12 at 1.

B. **Intermediate Court of Appeals Proceedings**

Petitioner appealed his conviction to the Intermediate Court of Appeals ("ICA"), arguing in pertinent part that the circuit court erred in denying the Motion to Suppress. *State v. Kaneaiakala*, 141 Hawaiʻi 67, 404 P.3d 658 (Table), 2017 WL 5151443 (Haw. Ct. App. Nov. 7, 2017) ("*Kaneaiakala I*"); *see also* ECF No. 10-15 at 1–2. The ICA affirmed the circuit court's ruling that Laraway's pretrial identification of Petitioner was sufficiently reliable and worthy of presentation to

and consideration by the jury. *Kaneaiakala I*, 2017 WL 5151443, at *2–3. The ICA applied the relevant evidence adduced at the suppression hearing to each of the five *Padilla/Biggers* factors and in doing so rejected Petitioner's arguments that Laraway's view of the suspect was fleeting and that her unspecific and inaccurate description of the suspect to the 911 dispatcher rendered her identification unreliable. *Id.*

C.  **Hawaiʻi Supreme Court Proceedings**

On February 2, 2018, the Hawaiʻi Supreme Court granted Petitioner's Application for Writ of Certiorari. ECF No. 10-18. On October 1, 2019, it affirmed the ICA's decision, concluding that the circuit court did not err in finding reliable Laraway's identification of Petitioner under the then-applicable *Padilla/Biggers* factors.[2] *See State v. Kaneaiakala*, 145 Hawaiʻi 231, 249–50, 450 P.3d 761, 779–80 (2019) ("*Kaneaiakala II*"); *see also* ECF No. 10-19. The court relied on various findings made by the circuit court regarding the *Padilla/Biggers* factors in upholding the identification ruling, which findings are discussed in greater detail below. *Id.* at 241, 450 P.3d at 771 (alterations in original).

---

[2]  The court identified additional factors that trial courts must consider in evaluating eyewitness and show-up identifications but did not apply them to Petitioner's case because the *Padilla/Biggers* factors governed during Petitioner's circuit court proceedings. *See Kaneaiakala II*, 145 Hawaiʻi at 241–49, 450 P.3d at 771–79.

9

### D. Current Proceedings

On September 28, 2020, Petitioner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"). ECF No. 1. On October 2, 2020, the Court issued an order dismissing the Petition without prejudice because Petitioner failed to identify the relief sought. ECF No. 4.

Petitioner filed his Amended Petition on October 30, 2020, asserting that the show-up identification violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. ECF No. 5 at 5. Petitioner asks the Court to vacate, set aside, or correct his judgment of conviction or release him from custody. *Id.* at 16. On January 15, 2021, Respondent Martin Frink, Warden of Saguaro Correctional Center ("Respondent"), filed his Answer and Opposition to the Amended Petition. ECF Nos. 10, 10-1. Petitioner filed his Reply Brief on April 12, 2021. ECF No. 17.

## II. LEGAL STANDARD

The Amended Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which forecloses habeas relief unless the adjudication of a claim on the merits in state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision is contrary to federal law if the state court applies a rule of law that contradicts Supreme Court precedent, or if the state court makes a determination contrary to a Supreme Court decision on materially indistinguishable facts. *See Price v. Vincent*, 538 U.S. 634, 640 (2003) (citation omitted). "A state-court decision 'involve[s] an unreasonable application' of clearly established Supreme Court precedent if 'it correctly identifies the governing legal rule' but then applies that rule to the facts of a particular case in an 'objectively unreasonable' way, such that the state court's ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Carter v. Davis*, 946 F.3d 489, 501 (9th Cir. 2019) (citation omitted).

Further, under § 2254(d)(2), "a state-court decision is 'based on an unreasonable determination of the facts' if '[the court is] convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.'" *Id.* (citation omitted).

Section 2254(d) imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), which "demands

11

that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). A federal court may not "substitute[] its own judgment for that of the state court." *Id*. at 25. Factual determinations by state courts are presumed correct and a petitioner has the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Cudjo v. Ayers*, 698 F.3d 752, 762 (9th Cir. 2012) ("[T]he statement of facts from the last reasoned state court decision 'is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence.'" (citations omitted)).

In applying the foregoing standards, federal courts review the last reasoned state court decision. *See Smith v. Hedgpeth*, 706 F.3d 1099, 1102 (9th Cir. 2013).

### III. DISCUSSION

Petitioner argues that Laraway's show-up identification violated his due process rights under the Fifth and Fourteenth Amendments because it was impermissibly suggestive and unnecessary and gave rise to a very substantial likelihood of irreparable misidentification. ECF No. 5 at 5–6. Respondent counters that although the identification procedure was impermissibly suggestive, Laraway's identification was reliable under the totality of the circumstances. ECF

12

No. 10-1 at 20–22. For the following reasons, Petitioner is not entitled to habeas relief.[3]

The Hawai'i Supreme Court's affirmance of Laraway's identification of Petitioner was neither contrary to nor an unreasonable application of Supreme Court precedent. Evaluations of pretrial identification procedures involve a two-step inquiry: whether the identification was unnecessarily suggestive, and, if so, "whether 'under the totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *See Biggers*, 409 U.S. at 198–99. "[T]he Due Process Clause requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" *Sexton v. Beaudreaux*, __ U.S. __, 138 S. Ct. 2555, 2559

---

[3] Respondent questions whether Petitioner exhausted his state law remedies, but concedes that Petitioner "may have minimally satisfied the exhaustion requirement." ECF No. 10-1 at 24 n.3. "A petitioner satisfies the exhaustion requirement by fully and fairly presenting each claim to the highest state court." *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (citation omitted). "[A] state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds by* 247 F.3d 904 (9th Cir. 2001). "[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). In this case, Petitioner fairly presented his claim to the Hawai'i Supreme Court because the state cases he cited in his Application for Writ of Certiorari analyzed federal constitutional issues. ECF No. 10-17 at 11–12.

(2018) (per curiam) (internal quotation marks and citations omitted). "Reliability of the eyewitness identification is the linchpin[] of that evaluation." *Id.* (brackets and citations omitted). The factors bearing on reliability include:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199–200.

Here, the Hawaiʻi Supreme Court's decision was not contrary to clearly established federal law because it applied the *Padilla/Biggers* factors to determine whether Laraway's show-up identification was reliable, *Kaneaiakala II*, 145 Hawaiʻi at 240–41, 450 P.3d at 770–71, and its determination was not contrary to *Biggers*.

Furthermore, the Hawaiʻi Supreme Court's application of *Biggers* was neither unreasonable nor based on an unreasonable determination of the facts. As the prosecution stipulated that the show-up identification was impermissibly suggestive, the only issue before the court was whether the identification was sufficiently reliable. *Kaneaiakala II*, 145 Hawaiʻi at 240–41, 450 P.3d at 770–71. Based on its review of the circuit court's findings regarding the *Padilla/Biggers* factors and the testimony adduced at the suppression hearing, the Hawaiʻi Supreme Court upheld the circuit court's conclusion "that within the totality of the

circumstances, including consideration of the five reliability factors, Laraway's identification was worthy of presentation to the jury." *Id.* at 241, 450 P.3d at 771. The Hawaiʻi Supreme Court pointed to these findings:

> (1) Laraway "got a good look" at the suspect on the day of the incident; (2) she observed the suspect's build, complexion, hairstyle, and clothing; (3) she did not recognize the suspect and felt something was wrong; (4) she looked back at the apartment while inside her car and saw that the suspect's upper body had entered the apartment window, prompting her to call 911; (5) Laraway had been "almost positive" at the field show-up that Kaneaiakala was the same man she saw beneath the window; and (6) at the motion to suppress hearing, Laraway "was sure that [Kaneaiakala] was the person she saw earlier," even if "she might have a hard time picking between two people with similar body shape and complexion without seeing their face[s]." The court also found that the show-up was conducted within three hours of Laraway's initial observation of the suspect.

*Id.* (alterations in original).

Petitioner has not presented any law or facts demonstrating that the Hawaiʻi Supreme Court's decision involved an unreasonable application of *Biggers* or was based on an unreasonable determination of the facts at hand. He appears to argue that the circuit court and Hawaiʻi Supreme Court should have considered these additional facts[4] in weighing the *Padilla/Biggers* factors: Laraway only saw the

---

[4] Petitioner also points to two facts relied upon by the circuit court and/or Hawaiʻi Supreme Court: the four-meter distance between Laraway and the suspect and the less than three-hour window between the crime and identification. ECF No. 5 at 5–6.

15

side of the suspect's face, for five seconds, while he was crouching behind a hedge; she has bad eyesight and was not wearing her glasses; she was walking with her son toward the crosswalk trying to cross a highway[5] toward her parked car; she only glanced at the suspect for five seconds; she was unsure if the brim of the suspect's cap was covering a portion of or casting a shadow over his face; she described the suspect to the 911 dispatcher as a Black man wearing a light blue t-shirt or white tank top and blue shorts[6] yet she identified the suspect as Caucasian on the suspect description form following the show-up identification; and she failed to inform the police officers that she saw the side of the suspect's face. ECF No. 5 at 5–6.

These facts do not render unreasonable the Hawaiʻi Supreme Court's application of *Biggers* to the pertinent facts in the record. Although Petitioner evidently believes his cited facts support a different outcome,[7] the Hawaiʻi

---

[5] While Petitioner references a "highway," Laraway walked across Date Street, not a highway. ECF No. 10-5 at 11–12. The Court takes judicial notice of the fact that Date Street is not a highway. *See* Fed. R. Evid. 201(b)(1).

[6] Laraway testified that she told the 911 dispatcher that the suspect was wearing a long-sleeved white or light blue shirt and did not mention anything about a tank top or blue shorts. ECF No. 10-5 at 21–22. When defense counsel asked Laraway if she told the dispatcher that the suspect was wearing a light blue tank top or T-shirt, Laraway said she "might have said T-shirt." *Id.* at 37.

[7] Even if the Court weighed the factors differently, in applying § 2254(d)'s highly deferential standard, it must give the Hawaiʻi Supreme Court the benefit of the

Supreme Court's evaluation of the totality of the circumstances, including consideration of the *Padilla/Biggers* factors, was not objectively unreasonable. Viewing the record, one can reasonably find that Laraway's show-up identification was reliable. Accordingly, the Court concludes that the Hawaiʻi Supreme Court's decision did not involve an unreasonable application of clearly established Supreme Court precedent.

The Court also concludes that the Hawaiʻi Supreme Court's decision was not based on an unreasonable determination of the facts. Having independently reviewed the record, the Court is *not* "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Carter*, 946 F.3d at 501 (internal quotation marks and citation omitted). To the contrary, the Hawaiʻi Supreme Court's factual findings were each supported by the record. For these reasons, Petitioner is not entitled to relief.

## C.  Certificate of Appealability

A district court must determine whether a petitioner is entitled to a Certificate of Appealability ("COA") in its order denying a petition. *See* Habeas Rule 11(a); Fed. R. App. P. 22(b)(1); *Rose v. Guyer*, 961 F.3d 1238, 1243 n.3 (9th

---

doubt as it cannot substitute its judgment for that of the state court. *See Woodford*, 537 U.S. at 24

Cir. 2020) (citation omitted). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to satisfy this standard, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Petitioner cannot meet this standard, any request for a COA is DENIED.

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES the Amended Petition. ECF No. 5. Any request for a COA is likewise DENIED. The Clerk is directed to enter judgment in favor of Respondent and close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 25, 2021.

Jill A. Otake
United States District Judge

CIVIL NO. 20-00264 JAO-RT; *Kaneaiakala v. Frink*; ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

18